**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| MIGNON R. ANTHONY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00107 |
| | ) | (AJT/IDD) |
| ALEXANDRIA CITY PUBLIC SCHOOLS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

Laurie L. Kirkland, VSB No. 75320
BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)
*Counsel for Defendant Alexandria City School Board*

Date: May 6, 2022

## **Table of Contents**

Preliminary Statement .................................................................................................... 1

Facts, as Alleged in the First Amended Complaint ........................................................ 1

Argument ........................................................................................................................ 4

I.    Counts I-III Fail to State Any Claim under Title VII ........................................... 4

    A.    Ms. Anthony Has Failed to Allege Facts Sufficient to Support a Claim of
    Discrimination Based on Sex (Count I) ...................................................... 4

        1.    The School Board's Alleged Action of Stripping Ms. Anthony of
        Supervisory Duties" Was Neither Sufficiently Adverse, Nor Based on Sex ..... 5

        2.    Ms. Anthony Alleges that a Restructuring of Positions Resulted Not Only in
        Changes to Her Position, but Also to Positions Held by *Male* Employees ........ 7

        3.    Following the Restructuring, Ms. Anthony Concedes that the School Board
        Selected a Female to Fill a Position that "Mirrored" Her Prior Role ................ 7

    B.    Ms. Anthony Has Not Alleged Facts to Support a Hostile Work Environment
    Based on Sex (Count II) ............................................................................. 8

        1.    Ms. Anthony Alleges No Facts to Support Harassment based on Sex ............... 8

        2.    The Alleged Harassment Identified in the First Amended Complaint Was
        Neither Severe Nor Pervasive ........................................................... 9

    C.    As Ms. Anthony Did Not Engage in Activity Protected by Title VII, Her First
    Amended Complaint Fails to State a Retaliation Claim (Count III) ....................... 11

II.   Counts IV-VI Fail to State Any Claim under the ADEA ................................... 12

    A.    Contrary to Ms. Anthony's Conclusorily Allegations, Ms. Anthony Has Failed to
    Allege that She Engaged in Activity Protected by the ADEA (Counts IV & VI) ... 12

    B.    Ms. Anthony Also Does Not Allege Facts Sufficient to State a Claim of Hostile
    Work Environment based on Age (Count V) ........................................................ 14

III.  Ms. Anthony's Claim under Title IX Should Be Dismissed (Count VII) ...................... 16

    A.    Any Claim by Ms. Anthony under Title IX Arising Out of Her Position
    Elimination Is Barred by the Applicable Statute of Limitations ............................. 16

    B.    To the Extent Ms. Anthony's Claim Is for Subsequent Losses of Opportunities
    or Duties, She Has Not Alleged Facts Sufficient to Hold the School Board
    Liable under Title IX ................................................................................. 18

IV.   Ms. Anthony's Claims for Punitive Damages Should Be Dismissed ........................... 20

Conclusion ..................................................................................................................... 21

**Preliminary Statement**

Plaintiff Mignon Anthony ("Ms. Anthony"), who formerly served as a Chief Operating Officer for the Alexandria City Public Schools, which are operated by the Alexandria City School Board ("School Board"), filed this action alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and Title IX of the Education Amendments of 1972 ("Title IX"), primarily arising out of the School Board's restructuring of its executive leadership teams, which allegedly altered her duties and ultimately resulted in the elimination of her position.

Although Ms. Anthony contends that the School Board eliminated her position because of her age and sex (female), her allegations reveal that the duties of her prior position were subsumed by two new positions: one of which the School Board filled with an employee, who, like Ms. Anthony, is in his 60s, and the other of which the School Board filled with an employee, who, like Ms. Anthony, is female. In addition, while Ms. Anthony alleges that the School Board retaliated against her for raising claims of sex and age discrimination, the exhibit attached to her First Amended Complaint demonstrates that she brought no such concerns to the School Board's attention prior to any alleged adverse action. Thus, as to all claims, Ms. Anthony has not alleged facts sufficient to make her claim to relief even minimally plausible. Moreover, with respect to Title IX, Ms. Anthony's wrongful discharge claim is barred by the statute of limitations. As such, the School Board respectfully requests that the First Amended Complaint be dismissed.

**Facts, as Alleged in the First Amended Complaint**[1]

In 2018, the School Board hired Ms. Anthony as a Chief Operating Officer, even though she lacked an advanced degree, which was a minimum qualification for the position. (Am.

---

[1] While the School Board disputes may of the facts alleged by Ms. Anthony and believes her facts to be incomplete, it accepts them as true, as it must, solely for the purposes of this Motion.

Compl. ¶ 13; n.14.) In this position, Ms. Anthony bore responsibility for several departments, including ACPS's transportation system, which included oversight of ACPS's school bus drivers. (Am. Compl. ¶¶ 14; Ex. 1.)

A few months after she began her employment, the School Board hired Dr. Gregory Hutchings, Jr. as it is superintendent (the "Superintendent"). (Am. Compl. ¶ 17.) From the outset, Ms. Anthony alleges that the Superintendent appeared offended when Ms. Anthony would reference her "extensive experience" in his presence and that he insinuated that she behaved as though she knew more than he did. (Am. Compl. ¶¶ 17-18.) Ms. Anthony apparently attributed Dr. Hutching's perceived offense to his alleged "posture of not seeking or taking advice from individuals who were older women," though she comments that this was true primarily on the "business side," but not on the "academic side." (Am. Compl. ¶ 18.) Notwithstanding this alleged observation, Ms. Anthony concedes that, the following year, the Superintendent selected Dr. Stephen Wilkins (age 62) as his Chief of Human Resources (a business-side position), suggesting that the Superintendent's decisions even on the "business-side" also were not influenced by one's age. (Am. Compl. ¶ 19; n. 4.) After the hiring of Dr. Wilkins, Ms. Anthony alleges that her role began to change as the Superintendent invited Dr. Wilkins to meetings, while meeting less often with Ms. Anthony. (Am. Compl. ¶¶ 19-20.)

In the fall of 2019, several school bus drivers threatened to strike due to their job dissatisfaction. (Am. Compl. ¶ 21.) In addressing their threats to strike, which Ms. Anthony previously has conceded "would have had a devastating impact on daily school operations and for this reason might have appeared to require a heightened and more immediate and stronger response by leadership" (Am. Compl. Ex. 1 at p. 2), the Superintended decided that Human Resources ("HR), including Dr. Wilkins as Chief of Human Resources and Sandra Hardeman (female, age 51) as the Director of Employee Relations should meet with the bus drivers. (Am.

Compl. ¶ 24.) The next day, the Superintendent placed the Director of Transportation, Charles Stone, on administrative leave. (Am. Compl. ¶ 25.) Ms. Anthony disagreed with the Superintendent's handling of this situation, and she became frustrated that he would not meet with her to discuss her opinions. (Am. Compl. ¶¶ 26-27.) She also disagreed with HR's investigation and the Superintendent's proposed remedy of the situation. (Am. Compl. ¶ 29.)

Accordingly, on November 11, 2019, Ms. Anthony wrote the School Board directly, criticizing the Superintendent's handling of the school bus drivers' threats to strike. (Am. Compl. ¶¶ 30, 32; Ex. 1.) Despite her claims in the First Amended Complaint, however, ***nowhere*** in her letter to the School Board did Ms. Anthony raise any concerns that the Superintendent had taken any actions based on any employee's sex or age. (Am. Compl. Ex. 1.) While she directly accused the Superintendent of "personal bias against the Director of Transportation," she provided no factual basis for this accusation, nor did she not attribute the alleged "personal bias" to any protected characteristic. (Am. Compl. Ex. 1.) In response, the School Board concluded that the concerns that Ms. Anthony had outlined were "more appropriately addressed with the Superintendent" than by the School Board. (Am. Compl. ¶ 32, Ex. 2.) Thereafter, Ms. Anthony alleges that the Superintendent allegedly advised her that he viewed her letter criticizing him as a betrayal, and he was particularly offended by the accusation of bias. (Am. Compl. ¶ 35.)  Around the same time, Ms. Anthony alleges that, during a meeting, the Superintendent yelled at her, disparaged her, and stormed out of the meeting. (Am. Compl. ¶¶ 38-40.)

In December 2019, Ms. Anthony alleges that the Superintendent notified her that her position would be eliminated at the end of her current contract year as part of a restructuring of the executive leadership teams. (Am. Compl. ¶ 44.)  On December 19, 2019, the Superintendent presented his restructuring plan to the School Board, and on January 9, 2020, the School Board voted to adopt the plan, which affected seven positions in two departments. (Am. Compl. ¶ 45.)

Under the restructuring plan, Ms. Anthony alleges that the Superintendent proposed to eliminate her Chief Operating Officer position and Dr. Wilkins' Chief of Human Resources position to create a new Chief of Staff position that would handle their executive leadership duties. (Am. Compl. ¶ 44.) The Superintendent then selected Dr. Wilkins, with whom he had worked twice before, prior to their current positions with ACPS, and who, like Ms. Anthony, is in his 60s, for the Chief of Staff position. (Am. Compl. ¶ 44; n.4.) Ms. Anthony alleges that a new position of Executive Director of Facilities and Operations also was created, which position, while organizationally lower, "mirrored" her former position as Chief Operating Officer, including its requirement of an advanced degree—something that Ms. Anthony admittedly did not hold. (Am. Compl. ¶¶ 52-53; n. 14.) Ms. Anthony alleges that the School Board selected Dr. Alicia Hart (female) as the acting director for this newly created position. (Am. Compl. ¶ 54.)

During the remainder of her contract, through June 2020, Ms. Anthony complains that the Superintendent and Dr. Wilkins continued to treat her unfairly, alleging that they began "undoing or freezing" many of her prior changes, excluding her from duties that impacted the following school year (though she remained in charge of evaluations for the current school year), and referring to her ideas as "old school." (Am. Compl. ¶¶ 55-56, n. 17.) For the reasons set forth fully below, none of the conduct about which Ms. Anthony complains is sufficient to raise her claim to relief under Title VII, the ADEA, or Title IX above the speculative level. Accordingly, the School Board respectfully requests that the First Amended Complaint be dismissed.

## Argument

**I.     Counts I-III Fail to State Any Claim under Title VII.**

### A.  Ms. Anthony Has Failed to Allege Facts Sufficient to Support a Claim of Discrimination Based on Sex (Count I).

In Count I of her First Amended Complaint, Ms. Anthony alleges that the School Board violated Title VII by "stripping her of supervisory duties and ultimately terminating her

employment on the basis of her sex." (Am. Compl. ¶ 64.) To establish a prima face case of sex discrimination, "a plaintiff must allege facts that show (1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment actions, and (4) different treatment from similarly situated employees outside of the protected class." *Garrett v. Barsa*, 2021 WL 5768120, *5 (E.D. Va. Sept. 27, 2021). While Ms. Anthony's factual allegations need not prove a prima facie case, "they must be 'enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

As set forth below, Ms. Anthony's First Amended Complaint contains no non-conclusory facts to support her claim that the School Board treated her differently from similarly-situated male employees based on sex. Rather, because the First Amended Complaint confirms that, with respect to any adverse employment actions, the School Board's decisions impacted women and men alike, Ms. Anthony's allegations do not raise her right to relief above the speculative level.

### 1. The School Board's Alleged Action of Stripping Ms. Anthony of Supervisory Duties" Was Neither Sufficiently Adverse, Nor Based on Sex.

In Count I, Ms. Anthony first complains that the School Board "stripped her of supervisory duties" based on her sex. While the facts on which she relies are not clear from Count I itself, the School Board presumes that Ms. Anthony is referring to her allegations with respect to how the Superintendent handled complaints that he received from school bus drivers.

As set forth in the First Amended Complaint, Ms. Anthony alleges that, in response to the bus drivers' threats of a strike, the Superintendent minimized her role in favor of allowing HR to investigate and handle the complaints. (Am. Compl. ¶ 21-24.) As an initial matter, this alleged action is not sufficiently adverse to support a claim of discrimination because this decision by the Superintendent did not "adversely affect the terms, conditions, or benefits of [Ms. Anthony]'s employment, such that [Ms. Anthony suffered 'some ***significant detrimental effect***.'" *Kirkland v. Mabus*, 206 F.3d 1073, 1081 (E.D. Va. 2016) (emphasis added) (quoting *Holland v. Wash.*

*Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)); *see also Laird v. Fairfax County*, 978 F.3d 887, 892-93 (4th Cir. 2020). As the court in *Kirkland* expressly held, "removal of supervisory duties" is insufficiently detrimental where the removal of such duties does not affect the employee's salary, title, or benefits. *Kirkland*, 206 F.3d at 1081. Ms. Anthony's First Amended Complaint is devoid of any facts evidencing that she suffered any impact to her salary, title, or benefits.

Moreover, even if the Superintendent's decision to handle the bus drivers' complaints without Ms. Anthony's direct involvement could be deemed an adverse employment action, though it should not be, Ms. Anthony's own allegations make plain that this decision was not based on sex. Specifically, Ms. Anthony concedes that when the Superintendent determined that Ms. Anthony would not attend a meeting with the bus drivers, he instead decided that "Dr. Wilkins (male, 62) and Ms. Sandra Hardeman (female, 51), Director of Employee Relations, would attend alone." (Am. Compl. 24.) Given that the Superintendent designated another woman to perform this task, his decision to include two HR representatives (one of whom is female), but not to include Ms. Anthony, could not have been made on the basis of sex.

Likewise, as the investigation into the bus drivers' complaints proceeded, Ms. Anthony alleges that another employee, Mr. Charles Stone (male), was placed on administrative leave, thereby removing all of his duties during the investigation, though she alleges he had done nothing wrong. (Am. Compl. ¶ 25.) Because Ms. Anthony thus has alleged that a male employee was treated worse than she, it once again is apparent from her own allegations that such decisions were not being made on the basis of sex. In short, with respect to the alleged removal of Ms. Anthony's supervisory duties, such removal not only fails to constitute an adverse employment action, but there are no facts in the First Amended Complaint from which a finder of fact could plausibly conclude that these actions were taken on the basis of sex.

**2.   Ms. Anthony Alleges that a Restructuring of Positions Resulted Not Only in Changes to Her Position, but Also to Positions Held by *Male* Employees.**

To the extent Ms. Anthony bases her claim on the change in her duties and the ultimate elimination of her position following the School Board's vote to adopt a restructuring plan proposed by the Superintendent (Am. Compl. ¶¶ 44-46), Ms. Anthony's claim fares no better. According to the First Amended Complaint, seven positions were eliminated as part of the restructuring, and the impacts to four positions occurred immediately. In describing the effects of the restructuring, Ms. Anthony identifies no similarly situated male employee whom the School Board treated more favorably. On the contrary, Ms. Anthony concedes that at least two[2] of the eliminated positions were held by male employees outside of her protected class. (Am. Compl. 47-50.) Thus, with respect to the decision to restructure the department, which resulted in immediate changes to and the ultimate elimination of her position, Ms. Anthony again has failed to allege facts that raise her right to relief under Title VII above the speculative level.

**3.   Following the Restructuring, Ms. Anthony Concedes that the School Board Selected a Female to Fill a Position that "Mirrored" Her Prior Role.**

Finally, Ms. Anthony suggests in her First Amended Complaint that the restructuring plan was a "guise" for discrimination based on sex because, "after the Board's approval of the restructuring plan, a new position, Executive Director of Facilities and Operations, was created," which, "while organizationally lower, mirrored that of Ms. Anthony's [position] as Chief Operating Officer." (Am. Compl. ¶¶ 51-52.) However, to the extent this allegation is part of her claim in Count I, the claim should be dismissed because Ms. Anthony concedes that the School Board selected a female, Dr. Alicia Hart, to fill this position. (Am. Compl. ¶ 54.) And as is clear from the First Amended Complaint, Dr. Hart, unlike Ms. Anthony, not only held the requisite

---

[2] Ms. Anthony alleges the sex of only five of the employees who had held eliminated positions (identifying three of the seven (including herself) as female and two of the seven as male). (Am. Compl. ¶¶ 48-50.)

advanced degree to qualify her for the position (Am. Compl. ¶¶ 53-54; n. 14), but Dr. Hart also

was in the same protected class of female as Ms. Anthony.

As the Fourth Circuit has held, a plaintiff cannot establish a prima facie case where the

responsibilities of her position, when eliminated, are divided among employees sharing her same

protected class. *See Adkins v. Coventry Health Care, Inc.*, 172 Fed. App'x 19, (4th Cir. 2006)

(per curium). Accordingly, any claim based on the elimination of Ms. Anthony's position and

creation of new positions to subsume her duties should be dismissed as Ms. Anthony has failed

to plead facts that render plausible any claim of sex discrimination under Title VII.

**B.      Ms. Anthony Has Not Alleged Facts to Support a Hostile Work Environment
          Based on Sex (Count II).**

In Count II, Ms. Anthony alleges that the School Board subjected her to a hostile work

environment based on her sex. To bring a hostile work environment claim under Title VII, Ms.

Anthony must allege sufficient facts to plausibly show that the harassment she suffered was (1)

unwelcome, (2) based on her protected characteristic, (3) sufficiently severe or pervasive to alter

the conditions of her employment and create an abusive atmosphere, and (4) imputable to the

defendant. *Jones v. Sun Pharmaceutical Indus., Inc.*, 2020 WL 2501439, * (E.D. Va. May 14,

2020) (citing *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018) (citing *E.E.O.C. v.
Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)) (affirming grant of a motion to

dismiss)). Ms. Anthony's First Amended Complaint is devoid of facts sufficient to establish

harassment based on her sex or that any such harassment was severe or pervasive.

**1.   Ms. Anthony Alleges No Facts to Support Harassment based on Sex.**

To state a claim under Title VII, the alleged harassment must be based on a characteristic

protected by Title VII, such as sex. *See e.g., Causey v. Balog*, 162 F.3d 785, 801-02 (4th Cir.

1998) (finding no hostile work environment claim established where there were no derogatory

comments about the employee's protected characteristic or any other evidence that the

employer's conduct was motivated by such characteristic); *Scott v. Health Net Fed. Servs.*, 807 F. Supp. 2d 527, 536 (E.D. Va. 2011) (same).

In Count II, the alleged "harassment" includes allegedly ignoring Ms. Anthony's complaints, undermining her authority, taking away her supervisory duties, yelling at her, disparaging her, treating her as an "outsider," and terminating her employment. (Am. Compl. ¶ 70.) Ms. Anthony's First Amended Complaint, however, is devoid of any factual basis to support that she was subjected to this alleged "harassment" ***because*** she is female. The only allegation in the First Amended Complaint that appears to reference her sex is her bare assertion that the Superintendent "generally took the posture of not seeking or taking advice from individuals who were older women, most notably on the business side (versus the academic side) of ACPS— instead choosing to only dictate to them what he wanted them to do." (Am. Comp. 18.) As this court has held previously, a conclusory assertion that a supervisor is not willing to work with an employee because she is female, is but a "naked assertion devoid of further factual enhancement" that would be not sufficient to state a plausible claim. *Garrett v. Barsa*, 2021 WL 5768120, \*6 (E.D. Va. Sept. 27, 2021) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). As Ms. Anthony has pleaded no facts to support that any alleged "harassment" of her was based on her sex, she has failed to state a hostile work environment claim under Title VII.

### 2. The Alleged Harassment Identified in the First Amended Complaint Was Neither Severe Nor Pervasive.

In addition to failing to allege any harassment ***based on sex***, the actions about which Ms. Anthony complains in Count II also do not clear the "high bar" needed to satisfy the "severe or pervasive test." *Garrett*, at \*9 (citing *Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)).

Title VII provides a cause of action only when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v.*

*Forklift, Inc.* 510 U.S. 17, 21 (1993). Thus, to survive a motion to dismiss, Ms. Anthony must allege facts that plausibly could support such an abusive working environment. *See Mustafa*, 313 F. Supp. at 685; *Sally v. Sch. Bd. of Amelia Cty.*, 2021 WL 5760893, *15 (E.D. Va. Dec. 3, 2021) (citing *Jones* at *6 (E.D. Va. May 14, 2020)). Importantly, "[e]ven incidents that would objectively give rise to bruised or wounded feelings will not . . . satisfy the severe or pervasive standard. *Sally* at *15 (quoting *Sunbelt Rentals, Inc.*, 521 F.3d at 315-16). This is so because "Title VII does not create a general civility code in the workplace, and complaints premised on nothing more than . . . callous behavior by one's supervisors or a routine difference of opinion and personality conflict with one's supervisor are not actionable." *Mustafa* at 685 (citing *Mosby-Grant v. Cty. of Hagerstown*, 630 F. 3d 326, 335 (4th Cir. 2010); *Sunbelt Rentals Inc.*, 521 F.3d at 315-16)).

Here, Ms. Anthony's First Amended Complaint is devoid of any discriminatory intimidation, ridicule, or insults about her sex that would give rise to an abusive working environment. Instead, Ms. Anthony complains that the School Board and its Superintendent ignored her complaints, undermined her authority, took away supervisory duties, yelled at her, disparaged her, treated her as an "outsider," and terminated her employment as part of a restructuring plan that affected both male and female employees. (Am. Compl. 45, 49-50, 70.) In amending her complaint to add additional detail, Ms. Anthony includes ***no*** additional allegations that reflect intimidation, ridicule, or insults based on sex that would constitute severe or pervasive harassment, rather she merely adds that she felt berated and disparaged in front of colleagues and felt her competence was unjustly questioned. (Am. Compl. ¶ 71.) While these complaints, at best, may evidence sharp behavior by a supervisor or a personality conflict between Ms. Anthony and the Superintendent and/or Dr. Wilkins, they do not make plausible an ***abusive*** working environment ***based on her sex***. For these reasons, Count II should be dismissed.

### C.   As Ms. Anthony Did Not Engage in Activity Protected by Title VII, Her First Amended Complaint Fails to State a Retaliation Claim (Count III).

In Count III, Ms. Anthony alleges that she made reasonable complaints about sex discrimination to the School Board and, in response, the School Board subjected her to adverse action, including the elimination of her position. (Am. Compl. ¶¶ 80, 83-84.) While these conclusory allegations may recite a prima facie case of retaliation, the First Amended Complaint is devoid of any factual basis to support the requisite element that Ms. Anthony engaged in activity protected by Title VII. *See* 42 U.S.C. § 2000e-3 (making it unlawful to retaliate against an employee for opposing any practice made unlawful **by this subchapter** or making a charge **under this subchapter**).

In her First Amended Complaint, Ms. Anthony alleges that she made one complaint to the School Board prior to the elimination of her position, namely, her November 11, 2019 letter, which is attached to her First Amended Complaint as Exhibit 1. In her letter, Ms. Anthony complained to the School Board of the Superintendent's handling of the bus drivers' threats to strike, and, in particular, she accused the Superintendent of "personal bias against the Director of Transportation." (Am. Compl. Ex. 1 at ¶ 1.) Not only did Ms. Anthony not attribute the Superintendent's alleged "personal bias" against the Director of Transportation to any characteristic protected by Title VII, but it is noteworthy that the Director of Transportation, Mr. Stone, was a **male** employee. (Am. Compl. ¶¶ 21, 50.) In short, her letter makes no reference to, or raises any inference of, sex discrimination. (Am. Compl. Ex. 1.)

It is well-settled that "Title VII is not a general bad acts statute," and, therefore, it does not prohibit retaliation "based on opposition to discriminatory practices that are outside the scope of Title VII." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011). Accordingly, "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class, or providing facts sufficient to create that inference, is insufficient." *Ghebreab*

11

*v. Inova Health System*, 2017 WL 1520427, *8 (E.D. Va. Apr. 26, 2017) (quoting *Young v. HP Enterprise Servs., LLC*, 2011 WL 3901881, *5 (E.D. Va. Sept. 6, 2011)) (dismissing retaliation claim where plaintiff complained in general terms of "discrimination" or "unfair treatment" without any reference to race, national origin, or a characteristic protected by Title VII).

In this case, Ms. Anthony's internal complaint to the School Board, which raised her belief that the Superintendent harbored "personal bias" toward a ***male*** employee, would not notify School Board that Ms. Anthony was engaging in activity protected by Title VII by complaining of discrimination based on sex. Absent notice of protected activity, the School Board could not have retaliated against Ms. Anthony for such alleged, but unknown, activity. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F. 3d 653, 657 (4th Cir. 1998) ("By definition, an employer cannot take action because of a factor of which it is unaware."). In short, as Ms. Anthony has not alleged facts to support that she engaged in activity protected by Title VII prior to any adverse action taken against her, Count III should be dismissed.

## II.     Counts IV-VI Fail to State Any Claim under the ADEA.

### A.      Contrary to Ms. Anthony's Conclusorily Allegations, Ms. Anthony Has Failed to Allege that She Engaged in Activity Protected by the ADEA (Counts IV & VI).

In both Counts IV and VI,[3] Ms. Anthony alleges that she made reasonable complaints about age discrimination to the School Board, but her concerns were "laughed off;" the School Board failed to properly address her complaints; and, "following those complaints," she was subjected to adverse employment actions, including the loss of supervisory duties and the termination of her employment. (Am. Compl. ¶¶ 94, 109-112.)

Like, Title VII (discussed in Section II(C) above), the ADEA also does not prohibit all types of discrimination; rather, the ADEA only prohibits discrimination against an employee

---

[3] Although Count IV is titled "discrimination" and Count VI is titled "retaliation," the actual allegations in each count are nearly identical. (*Compare* Am. Compl. ¶ 94 *to* ¶¶ 109-112.)

who has "opposed any practice *made unlawful by this section*" or who has "made a charge" *under this chapter*. 29 U.S.C. § 623(d). Accordingly, to state a claim of discrimination or retaliation for opposing discrimination or wrongdoing under the ADEA, Ms. Anthony first must have engaged in activity protected by the ADEA itself.

Although Ms. Anthony conclusorily alleges that she "raised age discrimination within ACPS" and "made reasonable complaints about age discrimination to the School Board," (Am. Compl. ¶¶ 94, 109), the First Amended Complaint itself identifies only one complaint by Ms. Anthony prior to the elimination of her position and any removal of supervisory duties about which she complains; namely, her November 11, 2019 letter to the School Board. (Am. Compl. ¶ 31; Ex. 1.) While Ms. Anthony characterizes this letter in her First Amended Complaint as "specifically indicating that in addition to undermining her authority as Chief Operating Officer, [the Superintendent] was treating Mr. Stone (male, 71) unfairly and discriminatorily based on his age" (Am. Compl. ¶ 31), a reading of the letter does not support her assertion as the letter itself contains no such allegation of discrimination based on age.

Instead, as discussed in Section II(C) above, Ms. Anthony's November 11, 2019 letter accused the Superintendent of "personal bias against the Director of Transportation", Mr. Stone, but nowhere in the letter did Ms. Anthony reference Mr. Stone's age or attribute the Superintendent's alleged bias to Mr. Stone's age as she now claims. (Am. Compl. Ex. 1.) Ms. Anthony cannot now—well after the fact—recharacterize her letter as activity protected under the ADEA. *See e.g., Martin v. Scott & Stringfellow, Inc.*, 643 F. Supp. 2d 770, 788 (E.D. Va. 2009) (although plaintiff argued that his various emails and memoranda complaining of a supervisor's comment about their work "being a young person's game" constituted opposition to a hostile work environment under the ADEA, such belief was not objectively reasonable at the time and thus did not constitute protected activity under the ADEA).

In asserting "personal bias" by the Superintendent against Mr. Stone, Ms. Anthony neither referenced age, nor outlined in her letter any objectively reasonable basis for believing at the time that such "personal bias" was due to his age. Accordingly, contrary to Ms. Anthony's conclusory allegations in the First Amended Complaint, Ms. Anthony's own exhibit demonstrates that, while she may have raised treatment by the Superintendent that she believed to be unfair, she did not engage in activity protected under the ADEA. As a result, the School Board could not have discriminated or retaliated against Ms. Anthony for any activity prohibited by the ADEA, and her nearly identical Counts IV and Count VI both should be dismissed.

**B.      Ms. Anthony Also Does Not Allege Facts Sufficient to State a Claim of Hostile Work Environment based on Age (Count V).**

In Count V, as in Count II, Ms. Anthony alleges that she was subjected to a hostile work environment when the School Board, through its agents, (1) ignored her complaints, (2) undermined her authority, (3) took away her supervisor duties, (4) yelled at her, (5) disparaged her in front of co-workers, (6) treated her as an outsider, and (7) terminated her employment, though this time she attributes these alleged actions to her age in violation of the ADEA rather than to her sex as she did in Count II. (Am. Compl. ¶ 99.)

To state a claim of hostile work environment under the ADEA, a plaintiff must allege facts plausibly demonstrating "(1) she experienced unwelcome harassment, (2) the harassment was based on her age, (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) there is some basis for imposing liability on the employer." *Buchhagen v. ICF Intern, Inc.*, 545 Fed. App'x 217, 219 (4th Cir. 2013) (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (holding that allegations that tell a story of a workplace dispute regarding reassignment and callous behavior by supervisors do not rise to the level of severe or pervasive harassment) and citing *Sunbelt Rentals*, 521 F.3d at 315 ("Workplaces are not always harmonious locales,

14

and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard.")).

For example, in *Buchhagen v. ICF Intern, Inc.*, the Fourth Circuit considered whether a supervisor had created a hostile work environment under the ADEA as against an employee whom he terminated based on the supervisor "mockingly yelling" at the employee, "yelling and pounding her hands on the desk during another meeting," "repeatedly harping on the employee's mistakes," "making snide comments," "playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing" the plaintiff. 545 Fed. App'x 217, 219 (4th Cir. 2013). In affirming the district court's dismissal of the claim, the Fourth Circuit found that the alleged conduct fell short of being severe or pervasive enough to establish an abusive working environment. *Id.*

Similarly, a couple of stray comments that might relate to age do not satisfy the severe or pervasive standard. *Coleman v. Pentagon Fed. Credit Union*, 2017 WL 1044693, *5 (E.D. Va. March 17, 2017). In *Coleman*, a plaintiff alleged one incident of unwelcome conduct related to her age, namely an incident in which a supervisor referred to the employee's hair as "gray" and stated she was "too old to work" at the company. *Id.* at *2. Although referring to an employee as having "gray hair" and being "too old to work" are related to age, the court found these comments by a supervisor fell short of "severe" or "pervasive" abuse. *Id.* at *5.

Ms. Anthony's allegations fare no better. Ms. Anthony's primary description of unwelcome harassment based on age is her allegation that, in meetings, the Superintendent and Chief of Human Resources were "openly dismissive and hostile" towards her, referring to her "***ideas*** as old school" and speaking "disparagingly of her." (Am. Compl. ¶ 56 (emphasis added).) She also contends that in at least one meeting, the Superintendent described her as "insubordinate;" became irate and began yelling at her, flailing his arms, and pointing his

15

fingers; disparaged her in front of her colleagues; and stormed out. (Am. Compl. ¶¶ 38-40.)  In addition, Ms. Anthony alleges that Superintendent appeared offended when she would refer to her extensive experience, believing her to be behaving as if she knew more than he and alleging that he generally chose not to seek or take advice from individuals who were "older women," at least not on the "business side" of ACPS. (Am. Compl. ¶¶ 17-18.)  Of course, having said that, Ms. Anthony concedes that the Superintendent selected Dr. Wilkins (age 62) as his Chief of Human Resources (on the "business-side"), and as part of the restructuring, he chose Dr. Wilkins as his Chief of Staff, notwithstanding that he too is older in age. (Am. Compl. ¶¶ 19, 44.)

As had been the case in *Buchhagen* and *Coleman*, none of the conduct described in Ms. Anthony's First Amended Complaint, including the Superintendent's alleged yelling in meetings, criticizing or disparaging her, or even his alleged reference to her *ideas* as "old school," makes plausible any claim that the School Board subjected her to severe or pervasive abuse because of her age. Instead, at best, Ms. Anthony describes a workplace that she did not find "harmonious" and a supervisor whom she found to be rude, callous, and dismissive of her *ideas*. As these facts do not "nudge her claim [of a hostile work environment based on age] across the line from conceivable to plausible," *Buchhagen*, 545 Fed. App'x at 219, Count V should be dismissed.

III.   **Ms. Anthony's Claim under Title IX Should Be Dismissed (Count VII).**

   A.   **Any Claim by Ms. Anthony under Title IX Arising Out of Her Position Elimination Is Barred by the Applicable Statute of Limitations.**

As Title IX does not contain its own express statute of limitations, the federal courts apply "the most closely analogous statute of limitations under state law." *Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 494 (W.D. Va. 2019) (citing *Reed v. United Transp. Union*, 488 U.S. 319, 323-24 (1989); *Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 224 (4th Cir. 1993)). With respect to claims arising in Virginia, courts have applied Virginia's two-year statute of limitations applicable to personal injury claims. *Id.*; *see also Graham v. Cty. of*

16

*Manassas Sch. Bd.*, 390 F. Supp. 3d 702, 709 (E.D. Va. 2019) (applying Virginia's two-year statute of limitations for personal injury actions to a claim under Title IX).

Although Virginia state law determines the applicable statute of limitations, federal law governs the date on which that limitations period begins to run. *Graham*, 390 F. Supp. 3d at 710 (citing *Owens v. Balt. Cty. State's Attorney's Office*, 767 F.3d 379, 388-89 (4th Cir. 2014)). Under federal common law, the "standard rule" is that "accrual occurs. . . when the plaintiff knows or has reason to know of his injury." *Id.* In determining when a plaintiff knows or has reason to know of an injury, the federal courts long have held that "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful." *Doe*, 400 F. Supp. 3d at 490 (discussing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) and applying its analysis to a Title IX claim); *see also Price v. Litton Bus. Sys., Inc.*, 694 F. 2d 963, 965 (4th Cir. 1982) (relying on *Ricks* to hold that the "filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition").

For example, in *Ricks*, a professor was informed that he would not receive a tenured position in the education department after the conclusion of his next one-year contract. 449 U.S. at 252. While the professor filed a charge with the EEOC within the appropriate time if counting from his last date of employment, the Supreme Court concluded his claim nonetheless was time-barred because his claim had accrued—not upon the professor's ultimate termination date—but the prior year when he learned of the decision to deny him tenure. *Id.* at 258. As the Supreme Court explained, the limitations period commenced when the tenure decision was communicated "even though one of the effects of the denial of tenure—the eventual loss of a teaching position—did not occur until later." *Id.*

17

As part of Count VII, Ms. Anthony alleges that the School Board violated Title IX by "ultimately terminating her position." (Am. Compl. ¶ 126.) With respect to this claim, Ms. Anthony has alleged that on December 6, 2019, she was notified that her position was going to be eliminated and that "her tenure with [the School Board] would end at the end of her current contract year on June 30, 2020." (Am. Compl. ¶ 44.) She further alleges that the restructuring plan leading to her position elimination was "presented to the School Board on December 19, 2019, and approved on January 9, 2020." (Am. Compl. ¶ 45.) Accordingly, by January 9, 2020, at the latest, Ms. Anthony has alleged that she knew or should have known of an injury that she attributed to an allegation of discriminatory position elimination. Accordingly, like the professor in *Ricks*, Ms. Anthony's filing period began to run no later than January 9, 2020, the date the School Board approved the decision to eliminate her position, even though one of the effects of the decision to eliminate her position—the eventual loss of job—did not occur until later. As Ms. Anthony did not file her Title IX claim until February 1, 2022, more than two years after the accrual of her claim, any claim under Title IX arising out of an action that occurred prior to February 1, 2020—including the School Board's decision to eliminate her position—is barred by the statute of limitations and should be dismissed with prejudice.

**B.      To the Extent Ms. Anthony's Claim Is for Subsequent Losses of Opportunities or Duties, She Has Not Alleged Facts Sufficient to Hold the School Board Liable under Title IX.**

Title IX conditions "an offer of [federal] funding [to an educational institution] on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of the funds." *Baynard v. Malone*, 263 F.3d 228, 237 (4th Cir. 2001) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998)). As the Supreme Court has explained, "the contractual nature of Title IX requires that a funding recipient

have notice that it may be liable for a monetary award; *i.e.*, it must actually be aware of the discrimination and fail to remedy it." *Id.*

In accordance with these considerations, "the Supreme Court has expressly rejected the use of 'principles of respondeat superior or constructive notice' for imposing liability on a school district under Title IX.'" *Id.* (quoting *Gebser*, 524 U.S. at 290). Instead, the School Board itself must have "actual notice" of intentional discrimination on the basis of sex in order to be liable under Title XI. *Baynard*, 268 F.3d at 244 (holding a "principal of a public school in Virginia cannot be considered the functional equivalent of the school district" for purposes of actual notice under Title IX); *Rasnick v. Dickenson Cnty. Sch. Bd.*, 333. F. Supp. 2d 560, 565-66 (W.D. Va. 2004) (local superintendent's knowledge held insufficient to confer on the School Board actual knowledge for purposes of Title IX); *see also Gebser*, 524 U.S. at 286 (Title IX supports a private action for damages only to remedy "intentional discrimination").

In Count VII, Ms. Anthony claims that she was subjected to "differential treatment due to her sex" by the Superintendent and Chief of Human Resources, whom she alleges "prevented her from being able to carry out the duties and responsibilities of her position within ACPS," denied "her the opportunity to receive a new position under the restructured leadership team," and "ultimately terminat[ed] her position." (Am. Compl. ¶¶ 123-124, 126.) More specifically, Ms. Anthony alleges that, after the School Board approved the restructuring plan (which eliminated her position), HR created and certified a new position of "Executive Director of Facilities and Operations," which, while organizationally lower, mirrored her eliminated Chief Operating Officer position, including its requirement of an advance degree, which Ms. Anthony admittedly did not hold. (Am. Compl. ¶ 52; n. 14.) Ms. Anthony further alleges that during this period of transition, her direct reports were instructed to speak only to Dr. Wilkins about ***the upcoming 2021*** budget priorities and ***future*** planning. (Am. Compl. ¶ 56; n. 17.)

As an initial matter, and for the same reasons discussed in Section II(A) above, Ms.

Anthony's Complaint is devoid of facts that render plausible her claim that any of these actions

were taken because of Ms. Anthony's sex. Indeed, Ms. Anthony's allegations make plain that the

School Board's restructuring plan affected both ***male and female*** employees (Am. Compl. ¶¶ 49-

50), and the School Board filled the "most similar" position of "Executive Director of Facilities

and Operations" with another female, Dr. Alicia Hart (Am. Compl. ¶ 54). Directing employees to

discuss matters affecting ACPS after Ms. Anthony's employment would have ended—while

notably not redirecting duties, such as annual performance reviews, applicable to her duties in

the current school year (Am. Compl. n. 17)—also does not evidence discrimination based on sex.

More importantly, however, Ms. Anthony alleges ***no facts*** to support her conclusory

claim that the School Board was aware of any intentional discrimination on the basis of sex.

Notably, as discussed in Section II(C) above, the sole complaint by Ms. Anthony to the School

Board that she alleges and attaches to her First Amended Complaint as Exhibit 1 contains ***no***

***reference*** to discrimination based on sex and, importantly, it predates any of the conduct about

which Ms. Anthony complains in Count VII. (Am. Compl. ¶¶ 30-32, Ex. 1.) As only the School

Board members constitute appropriate officials pursuant to the Supreme Court's interpretation of

Title IX for receiving "actual notice" of and taking effective action to remedy intentional

discrimination based on sex, Ms. Anthony's First Amended Complaint fails to allege facts upon

which this Court could find the School Board liable under Title IX, and Count VII should be

dismissed in its entirety.

## IV.    Ms. Anthony's Claims for Punitive Damages Should Be Dismissed.

Finally, should any of Ms. Anthony's claims survive this motion to dismiss, at a

minimum, Ms. Anthony's claim for punitive damages must be dismissed. As an initial matter,

punitive damages are not available under the ADEA or Title IX, *see Fariss v. Lynchburg*

*Foundry*, 769 F.2d 958, 967, n.11 (4th Cir. 1985) (as to the ADEA); *Mercer v. Duke Univ.*, 50

Fed. App'x 643, 644 (4th Cir. 2002) (as to Title IX), and the School Board is immune from

punitive damages under Title VII, *see* 42 U.S.C. § 1981a(b)(1) (expressly providing that a

complaining party may not recover punitive damages against a "government, government entity,

or political subdivision"); *Joyner v. Fillion*, 17 F. Supp. 2d 519, 529 (E.D. Va. 1998) (dismissing

claims for punitive damages against the government under Title VII). Accordingly, any claim for

punitive damages should be dismissed.

## Conclusion

For the foregoing reasons, Defendant Alexandria City School Board, by counsel,

respectfully requests that this Court dismiss the First Amended Complaint filed against it by

Plaintiff Mignon R. Anthony and award it such other and further relief as this Court deems just

and appropriate.

> Respectfully submitted,
>
> ALEXANDRIA CITY SCHOOL BOARD
> By Counsel

Date: May 6, 2022

BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)


By:      /s/ Laurie L. Kirkland
         Laurie L. Kirkland, VSB No. 75320
          lkirkland@bklawva.com
         Counsel for Alexandria City School Board

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of May 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Francisco Mundaca, VSB No. 96073
> Ashley K. Collette, *Admitted Pro Hac Vice*
> THE SPIGGLE LAW FIRM
> 4830 31st Street South, Suite A
> Arlington, Virginia 22206
> fmundaca@spigglelaw.com
> acollette@spigglelaw.com
> Counsel for Plaintiff Mignon R. Anthony

>   /s/ Laurie L. Kirkland
> Laurie L. Kirkland, VSB No. 75320
> BLANKINGSHIP & KEITH, P.C.
> 4020 University Drive, Suite 300
> Fairfax, Virginia 22030
> Phone: 703-691-1235
> Fax: 703-691-3913
> lkirkland@bklawva.com
> Counsel for Alexandria City School Board